**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 4, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

THE ESTATE OF ROBERT VALLINA;
JUAN J. VALLINA, personally;
MARTHA VALLINA, personally and as
personal representative of the Estate of
Robert Vallina, deceased,

     Plaintiffs - Appellants,

v.

THE COUNTY OF TELLER SHERIFF'S
OFFICE AND ITS DETENTION
FACILITY; SHERIFF JASON
MIKESELL, in his official capacity;
DEPUTY CHRISTIANSON, in his official
capacity; DEPUTY JOHNSON, in his
official capacity; JOHN/JANE DOE,
(1-20), in their respective individual and
official capacities,

     Defendants - Appellees.

No. 17-1361
(D.C. No. 1:15-CV-01802-RM-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **MATHESON**, Circuit Judges.
_____

The estate of Robert Vallina, along with Juan and Martha Vallina, appeal from

the district court's grant of summary judgment in favor of defendants on claims

relating to the tragic death by suicide of Robert Vallina while detained at the Teller

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

County Detention Center ("TCDC"). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

Robert Vallina was booked into the TCDC following his arrest by the Woodland Park Police Department on May 27, 2014. When asked about his medical history during the booking process, Vallina stated he had previously been hospitalized at Cedar Springs Hospital, a mental health facility in Colorado Springs, but denied both present suicidal ideation and prior suicide attempts.

TCDC contracts with Correctional Healthcare Companies ("CHC") for medical care of inmates and detainees. CHC medical staff assessed Vallina on June 5, 2014. At the time of the assessment, CHC possessed medical records from Vallina's prior incarcerations that showed a diagnosis of paranoid schizophrenia, prior suicide attempts, and prescribed medications. During the assessment, Vallina disclosed his previous hospitalization at Cedar Springs and his schizophrenia diagnosis, but again denied active suicidal ideation. CHC medical staff described Vallina's behavior as appropriate and alert. Vallina refused to authorize CHC medical staff to obtain his treatment records from Cedar Springs Hospital. The CHC assessment cleared Vallina for placement in general population at TCDC.

While in general population from May 31, 2014 to June 13, 2014, Vallina requested medical attention related to genitourinary complaints six times. Medical professionals responded to each complaint. Vallina did not raise any concerns regarding his mental health during those medical visits.

On June 11, 2014, the Teller County District Court ordered a competency evaluation for Vallina. Vallina was transported to Colorado Mental Health Institute-Pueblo ("CMHIP") for that evaluation on July 29, 2014. During the month that Vallina remained at CMHIP, Dr. Grimmett, a psychologist, conducted the court-ordered competency examination. Dr. Grimmett concluded that Vallina was competent to stand trial. Vallina was discharged from CMHIP and returned to TCDC general population on August 29, 2014. Dr. Petrescu, a psychiatrist, evaluated Vallina prior to his discharge and prepared his discharge report. The report diagnosed Vallina as "malingering" because he did not want to return to TCDC. It further indicated he was "not aggressive or suicidal" and had no acute medical problems.

Vallina died by suicide in the early hours of September 2, 2014. When Officer Johnson checked that each inmate was in his cell during lockdown at 11:00 p.m. the previous night, Vallina did not appear in distress or request assistance. Vallina was also behaving normally when Deputy Christianson conducted a routine cell check approximately an hour later. But just after 1 a.m., an inmate called the TCDC control room to report Vallina was behaving unusually. Christianson and Johnson were dispatched to Vallina's cell, where he was found hanging from a bed sheet. Attempts to revive Vallina were unsuccessful.

Vallina's estate and two surviving family members brought suit against the County of Teller Sheriff's Office and Sheriff Ensminger, TCDC, Christianson, Johnson, and John and Jane Does 1-20. The complaint alleged wrongful death under

Colo. Rev. Stat. § 13-21-202, and violations of Vallina's federal constitutional rights under 42 U.S.C. § 1983. Plaintiffs later conceded that Sheriff Ensminger in his official capacity was the sole proper defendant.[1] The district court granted summary judgment in favor of Ensminger on all claims. Plaintiffs timely appealed.

## II

We review a district court's grant of summary judgment de novo. Koch v. City of Del City, 660 F.3d 1228, 1238 (10th Cir. 2011). A party is entitled to summary judgment if there no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Id. In conducting our review, we view the evidence in the light most favorable to the non-moving party. Id.

### A

State officials violate a pretrial detainee's Fourteenth Amendment Due Process rights "when they are deliberately indifferent to an inmate's serious medical needs." Lopez v. LeMaster, 172 F.3d 756, 764 (10th Cir. 1999) (quotation omitted). Our circuit has long applied the same test for deliberate indifference to serious medical needs to both Eighth Amendment claims brought by prisoners and Fourteenth Amendment claims brought by pretrial detainees. See, e.g., Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009). Under that standard, "[d]eliberate indifference has objective and subjective components." Callahan v. Poppell, 471 F.3d 1155, 1159 (10th Cir. 2006). The risk of suicide plainly qualifies as sufficiently serious, thus

---

[1] Sheriff Ensminger was later replaced in office by Sheriff Mikesell, who has been automatically substituted pursuant to Fed. R. App. P. 43(c).

satisfying the objective component.  See Gaston v. Ploeger, 229 F. App'x 702, 710 (10th Cir. 2007) (unpublished); Collins v. Seeman, 462 F.3d 757, 760 (7th Cir. 2006).

To satisfy the subjective component, we have required the plaintiff to show "that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."  Martinez, 563 F.3d at 1089 (quotation omitted).  However, plaintiffs argue for the first time on appeal that this standard has been overruled by Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015).  See United States v. Nichols, 775 F.3d 1225, 1230 (10th Cir. 2014) (a panel may depart from circuit precedent if "an intervening Supreme Court decision . . . is contrary to or invalidates our previous analysis").

In Kingsley, the Supreme Court held that the Eighth Amendment standard for excessive force claims brought by prisoners, which requires that defendants act "maliciously and sadistically to cause harm," does not apply to Fourteenth Amendment excessive force claims brought by pretrial detainees.  135 S. Ct. at 2475 (quotation omitted).  The Court noted that "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less maliciously and sadistically."  Id. (quotation omitted).  Accordingly, a pretrial detainee need only show that the officers' use of force was "objectively unreasonable."  Id. at 2473.

Circuits are split on whether Kingsley alters the standard for conditions of confinement and inadequate medical care claims brought by pretrial detainees.  The Second, Seventh, and Ninth Circuits have interpreted Kingsley as displacing prior

5

subjective requirements.  See Miranda v. Cty. of Lake, 900 F.3d 335, 352 (7th Cir. 2018); Darnell v. Pineiro, 849 F.3d 17, 34-35 (2d Cir. 2017); Castro v. Cty. of L.A., 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc).  These courts have adopted an objective test requiring reckless disregard.  See Miranda, 900 F.3d at 353; Darnell, 849 F.3d at 36; Castro, 833 F.3d at 1071.  In contrast, the Fifth, Eighth, and Eleventh Circuits have held that Kingsley applies only to excessive force claims and does not extend to claims related to conditions of confinement or inadequate medical care.  See Whitney v. City of St. Louis, 887 F.3d 857, 860 n.4 (8th Cir. 2018); Dang ex rel. Dang v. Sheriff, Seminole Cty., 871 F.3d 1272, 1279 n.2 (11th Cir. 2017); Alderson v. Concordia Par. Corr. Facility, 848 F.3d 415, 420 (5th Cir. 2017).

As noted supra, however, plaintiffs did not raise the Kingsley issue below.  We generally do not review issues advanced for the first time on appeal.  See Tele-Communications, Inc., v. Comm'r, 104 F.3d 1229, 1232 (10th Cir. 1997).  Further, plaintiffs affirmatively argued the subjective prong of the deliberate indifference test before the district court.  Accordingly, plaintiffs may not have merely forfeited the issue, but invited error.  See F.T.C. v. Accusearch Inc., 570 F.3d 1187, 1204 (10th Cir. 2009).  And in any event, we conclude that plaintiffs' claim would fail under either standard.  That is, they have shown neither subjective disregard of a known risk, Martinez, 563 F.3d at 1089, nor objectively reckless disregard of a serious medical concern, Castro, 833 F.3d at 1071.[2]

_____

[2] Plaintiffs also argue that after Kingsley, simple negligence is enough to sustain a due process claim for inadequate medical care.  But the Supreme Court has

A prison official does not act recklessly or with deliberate indifference by failing to act to avert the suicide of a detainee who displays no outward indicators of suicidal ideation,[3] actively denies suicidal ideation, and has been cleared by a psychologist, a psychiatrist, and other medical professionals to be detained in general population.  See generally Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005) (noting that a prison official who serves "as a gatekeeper for other medical personnel capable of treating the condition may be held liable under the deliberate indifference standard if she delays or refuses to fulfill that gatekeeper role"); see also Weatherford ex rel. Thompson v. Taylor, 347 F. App'x 400, 403 (10th Cir. 2009) (unpublished) ("[A] prison official may rely on a medical professional's opinion if such reliance is reasonable." (quotation omitted)).  In this case, TCDC staff followed the recommendations of medical professionals who examined Vallina, none of whom concluded that he presented a suicide risk.  To the contrary, Dr. Petrescu, a psychiatrist, concluded that Vallina was not suicidal just days before his death.

---

consistently maintained that Fourteenth Amendment claims require "something more" than mere negligence.  Daniels v. Williams, 474 U.S. 327, 334 (1986).  The Court reiterated this principle in Kingsley, explaining that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." 135 S. Ct. at 2472 (quotation omitted).

[3] Plaintiffs point to deposition testimony from Martha Vallina that another inmate told her Vallina had attempted to commit suicide by banging his head against the bars of his cell sometime prior to his stay at CMHIP.  But hearsay testimony that would not be admissible at trial generally cannot be used to defeat a motion for summary judgment.  Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000).

**B**

Plaintiffs also argue that the district court erred in granting summary judgment on their failure to train claim. But that claim necessarily fails because they have not established an underlying constitutional violation. See Webber v. Mefford, 43 F.3d 1340, 1344-45 (10th Cir. 1994) ("A claim of inadequate training, supervision, and policies under § 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation by the person supervised.").

**C**

Finally, plaintiffs contest the district court's grant of summary judgment on their wrongful death claim. To prevail on that claim, plaintiffs must establish that a wrongful act by Sheriff Ensminger caused Vallina's death, and that Vallina would have been able to maintain an action for injuries had he survived. Colo. Rev. Stat. § 13-21-202. We agree with the district court that plaintiffs have not identified any wrongful act by Ensminger resulting in Vallina's death.

On appeal, plaintiffs argue Vallina died as a result of three wrongful acts: (1) the failure of Ensminger and his subordinates to reclassify Vallina following his return to TCDC from CMHIP; (2) the failure of TCDC to provide suicide prevention training; and (3) TCDC's refusal to accept medication for Vallina from his mother. As to the first, plaintiffs are unable to produce any evidence that such a reclassification would have prevented Vallina's suicide in light of a trained mental health professional's determination at CMHIP that Vallina was not a suicide risk and could return to general population. Similarly, plaintiffs failed to adduce evidence showing that TCDC's suicide

8

training policies are inadequate.  Finally, TCDC staff told Martha Vallina that it could not accept medication from her before Vallina spent a month at CMHIP.  Plaintiffs have not shown that this refusal caused Vallina's death.

## III

**AFFIRMED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge