**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JAMES ENDY,

*Plaintiff-Appellant*,

v.

COUNTY OF LOS ANGELES; LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,

*Defendants-Appellees.*

No. 19-55663

D.C. No. 2:16-cv-03344-RGK-SK

OPINION

Appeal from the United States District Court for the Central District of California R. Gary Klausner, District Judge, Presiding

Argued and Submitted June 3, 2020 Pasadena, California

Filed September 10, 2020

Before: Consuelo M. Callahan and Jacqueline H. Nguyen, Circuit Judges, and Yvette Kane,\* District Judge.

Opinion by Judge Callahan

---

\* The Honorable Yvette Kane, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

## SUMMARY[**]

### Civil Rights

The panel affirmed the district court's summary judgment in favor of defendants in an action brought pursuant to 42 U.S.C. § 1983 alleging that the County of Los Angeles and its Department of Children and Family Services violated plaintiff's due process and privacy rights by maintaining unfounded child abuse allegations against plaintiff in the California's Child Welfare Services Case Management System without providing him notice or a hearing to challenge them.

The panel held that the County has a strong interest in maintaining all reports of suspected child abuse in the Child Welfare Services Case Management System (CWS/CMS)—even those that result in "unfounded" dispositions—because doing so helps its child welfare and law enforcement agencies protect children from abuse and neglect. Here, plaintiff failed to raise a triable issue of material fact that the records of his "unfounded" allegations in CWS/CMS caused him reputational harm, or that they were used by the County to alter or extinguish his rights to employment, child placement, or child visitation. The record indicated that the County considers only "substantiated" and "inconclusive" allegations to be risk factors for child placement, but not "unfounded" ones such as plaintiff's. Accordingly, plaintiff failed to show that his inclusion in CWS/CMS implicated his liberty interests so as to require procedural due process.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel also held that plaintiff had not shown that the County publicly disseminates or misuses his information in a manner that would violate his constitutional right to privacy.

## COUNSEL

Diane B. Weissburg (argued) and Jerry A. Weissburg, Weissburg Law Firm, Los Angeles, California, for Plaintiff-Appellant.

Scott J. Carpenter (argued) and Jill Williams, Carpenter Rothans & Dumont, Los Angeles, California, for Defendants-Appellees.

## OPINION

CALLAHAN, Circuit Judge:

In California, state and local agencies maintain information on child abuse allegations primarily in two statewide databases—the Child Welfare Services Case Management System ("CWS/CMS") and the Child Abuse Central Index ("CACI"). CWS/CMS is an internal government database used primarily by county child welfare agencies to enter and manage information related to reports of suspected child abuse. In contrast, CACI is a statewide index of substantiated child abuse reports maintained by the California Department of Justice ("CA DOJ") and "available to a broad range of third parties for a variety of purposes." *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1177 (9th Cir. 2009). We have held that, under the Due Process Clause, an individual's inclusion in CACI requires that he

receive notice and "some kind of hearing" to challenge his inclusion. *See id.* at 1201.

This case presents us with the question of whether similar procedural protections are required for an individual's inclusion in CWS/CMS. In this action under 42 U.S.C. § 1983, James Endy asserts that the County of Los Angeles (the "County") and its Department of Children and Family Services ("DCFS") violated his due process and privacy rights by maintaining "unfounded" child abuse allegations against him in CWS/CMS without providing him notice or a hearing to challenge them. Endy, however, has not shown that the maintenance of his "unfounded" reports in CWS/CMS—an internal government database—caused him to suffer "stigma . . . plus alteration or extinguishment of 'a right or status previously recognized by state law.'" *Id.* at 1185 (quoting *Paul v. Davis*, 424 U.S. 693, 711 (1976)). Thus, we affirm the district court's grant of summary judgment for the County.

## I.

## A.

In 1980, the California state legislature enacted California's Child Abuse and Neglect Reporting Act ("CANRA"), Cal. Penal Code §§ 11164 *et seq.*, "to protect children from abuse and neglect," *id.* § 11164(b). Under the statute, any reasonable suspicion of child abuse or neglect must be reported by mandatory reporters to a responsible authority, such as local law enforcement or the county child welfare department, and may be reported by any other person. *Id.* §§ 11165.7, 11165.9, 11166. County welfare departments and law enforcement agencies are required to coordinate in the investigation of suspected child abuse or neglect. *Id.* § 11166.3. After investigating the report, the

welfare department must classify the result as (1) "substantiated," meaning that it is more likely than not that the reported child abuse or neglect occurred; (2) "unfounded," meaning the report is found to be false, inherently improbable, to involve an accidental injury, or not to constitute child abuse or neglect; or (3) "inconclusive," meaning the report is not unfounded, but there is insufficient evidence to determine whether the child abuse or neglect occurred. *See id.* §§ 11165.12, 11169(a). If a report is substantiated, the child welfare department must forward it to CA DOJ for inclusion in CACI. *Id.* § 11169(a). The information in CACI is referenced during licensing of childcare facilities and employment background checks of peace officers, childcare providers, and adoption agency workers. *Id.* § 11170(b).

Under CANRA, designated agencies are also required to maintain an internal record of all reports of child abuse received, irrespective of their ultimate disposition. *Id.* § 11165.9. These reports, and all associated information, are entered and maintained in an internal statewide database known as CWS/CMS. California developed and implemented CWS/CMS as a statewide case management system to "[p]rovide child welfare services workers with immediate access to child and family specific information in order to make appropriate and expeditious case decisions" and to provide them the information "needed to effectively and efficiently manage their caseloads and take appropriate and timely case management actions." Cal. Welf. & Inst. Code § 16501.5. According to the County's DCFS Child Welfare Policy Manual (hereinafter the "DCFS Policy Manual"), child welfare workers may search CWS/CMS to determine "whether a client has been a victim or suspect of child abuse or neglect, and whether he or she has received child welfare services in California." Information in

CWS/CMS is confidential, and absent court order, reports of suspected child abuse and information in CWS/CMS may not be disclosed outside of specified persons or agencies, such as child protective case workers, prosecutors, and court personnel. *See* Cal. Penal Code § 11167.5; Cal. Welf. & Inst. Code § 827; *In re Elijah S.*, 24 Cal. Rptr. 3d 16, 30 (Ct. App. 2005) (recognizing that § 827 "covers a wide range of records," including agency-maintained reports of suspected child abuse and neglect).

When a county child welfare agency transmits a substantiated report of child abuse for inclusion in CACI, it must notify the individual being listed. *See* Cal. Penal Code § 11169(c). The individual has the right to a hearing before the reporting agency to challenge his or her inclusion in CACI. *See id.* § 11169(d). In contrast, there is no statutory right to notice and a hearing, or other mechanism, for an individual to challenge the inclusion of a report in CWS/CMS. However, if a report previously filed in CACI "subsequently proves to be not substantiated," CA DOJ must be "notified in writing of that fact and shall not retain the report" in CACI. *Id.* § 11169(a). Thus, if a CACI hearing or a court proceeding determines a report to be unsubstantiated, the agency must notify CA DOJ to remove the listing from CACI. *Id.* § 11169(h). The agency must also update the listing in CWS/CMS to reflect any change in investigation disposition.

## B.

In July 2014, DCFS received a report that Endy had sexually and physically abused his four- and five-year-old daughters, and after investigation found the allegations to be substantiated. DCFS entered the allegations into CWS/CMS, reported the substantiated report to CA DOJ for inclusion in CACI, and filed a petition against him in the

juvenile court. In December 2014, the juvenile court dismissed the allegations. A month later, in January 2015, DCFS received new allegations against Endy, which it again substantiated after investigation. As before, DCFS entered its substantiated findings on the second allegations into CWS/CMS, forwarded the reports to CA DOJ for listing in CACI, and filed a petition against Endy in the juvenile court.

In February 2015, Endy requested a hearing with DCFS to challenge his inclusion in CACI. DCFS denied the request for a hearing because Endy's case was still pending in the juvenile court. In June 2015, the juvenile court dismissed the second allegations with prejudice, stating that "any and all allegations as to [Endy] sexually touching these children are absolutely dismissed." At some point after the juvenile court's dismissal of the allegations, Endy's listings were removed from CACI, and DCFS updated CWS/CMS to indicate that the allegations were "unfounded."[1] When Endy requested a hearing to challenge his inclusion in CWS/CMS, DCFS told him he had no right to such a hearing. The "unfounded" reports against Endy remain in CWS/CMS.

## C.

In May 2016, Endy filed a complaint against the County and employees of DCFS for alleged due process violations under § 1983, among other claims. According to Endy, his inclusion in CACI and CWS/CMS caused his employer, the California Department of Transportation ("Caltrans"), to

---

[1] In March 2018, during oral arguments before the Ninth Circuit on Endy's first appeal, the County's counsel informed Endy that his CACI listing had been removed. *Endy v. County of Los Angeles*, 716 F. App'x 700, 701 n.2 (9th Cir. 2018).

deny him a promotion and affected his ability to adopt or obtain guardianship.   In July 2016, the district court dismissed Endy's claims with prejudice.   On appeal, we affirmed the district court's dismissal with prejudice as to Endy's claim pertaining to his inclusion in CACI. *Endy v. County of Los Angeles*, 716 F. App'x 700, 701–02 (9th Cir. 2018).   However, we concluded that Endy's attempt to challenge his CWS/CMS listing was premature because he had not yet availed himself of the procedure under California Penal Code § 11169(d) "to challenge the factual allegations underlying the abuse complaint." *Id.* at 702.   We remanded in part, instructing the district court to dismiss Endy's due process claim regarding CWS/CMS *without* prejudice. *Id.*

In May 2018, Endy filed a First Amended Verified Complaint ("FAC") alleging that the County violated his due process rights pursuant to § 1983 and his right to privacy under the United States Constitution by placing him in CWS/CMS and "over 500 sub-databases"[2] and continuing to refuse to remove him from these databases or provide him with a hearing to challenge his inclusion in CWS/CMS.

---

[2] As the district court noted, Endy "does not detail what these 500 databases are, nor does he provide evidence that they exist or that he is listed on them."   The only sub-database that Endy mentions in his complaint is the Family and Children's Index ("FCI"), which the DCFS Policy Manual describes as a "centralized interagency database designed to facilitate identification of children and families who are at risk of child abuse and neglect."   According to the manual, participating FCI agencies agree to export limited "allowable information" into the FCI when "a record in their agency's database(s) meets one or more . . . at-risk criteria."   These "at-risk" criteria are defined to include "[a]ll substantiated or inconclusive allegations of child abuse to a child protective agency not including unfounded reports."   Because Endy does not present any evidence to show that his "unfounded" reports or other information are maintained in FCI or any other sub-database, we address only Endy's claims pertaining to CWS/CMS.

Again, he sought injunctive relief and damages. According to Endy, his continued inclusion in CWS/CMS stigmatized him as an alleged child abuser, caused him not to be promoted with his employer, prevented him from being able to adopt or work with or around children, violated his privacy, and caused him immense emotional distress.

The district court granted summary judgment for the County and DCFS. On Endy's due process claim, the district court presumed for purposes of its analysis that Endy's inclusion in CWS/CMS could result in stigma, but determined that Endy failed to show that the County's actions had restricted any of his previously recognized rights. The district court also rejected Endy's state law claim that the County violated his constitutional right to privacy, noting that Endy had not shown that the County disseminated or misused his information. Finally, the district court held that the County could not be held liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), reasoning that no County policy or custom could be blamed for a § 1983 constitutional deprivation without a sufficient showing that such a deprivation had occurred. The district court granted the County's motion for summary judgment and dismissed Endy's action with prejudice. Endy timely appealed.

## II.

We review the district court's grant of summary judgment de novo. *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). We may affirm the district court's decision if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While we must believe the nonmovant's evidence and draw justifiable inferences in his favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986), there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original). The party opposing the motion "may not rest upon the mere allegations or denials of his pleading," *id.* at 248, and affidavits or declarations supporting his opposition "must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4).

## III.

Endy's first claim under § 1983 is that the County deprived him of due process by maintaining the "unfounded" child abuse reports against him in CWS/CMS without giving him an opportunity to challenge them or seek their removal. When assessing procedural due process claims under § 1983, we ask whether the State deprived the plaintiff of a constitutional liberty interest, and if so, whether the deprivation's attendant procedures were constitutionally insufficient. *See Humphries*, 554 F.3d at 1184–85 (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

A liberty interest may be implicated "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). However, "procedural due process protections apply to reputational harm only when a plaintiff suffers stigma from governmental action plus alteration or extinguishment of 'a right or status previously recognized by state law.'" *Humphries*, 554 F.3d at 1185 (quoting *Paul*, 424 U.S. at 711). We have described

this standard as the "stigma-plus test." *See Hart v. Parks*, 450 F.3d 1059, 1070 (9th Cir. 2006).

Endy alleges that he meets the "stigma-plus" standard because he has suffered harm similar to the deprivation of rights we recognized in *Humphries*. There, we found that a person's inclusion in CACI implicated a constitutional liberty interest due to the resulting "stigma of being listed in the CACI as substantiated child abusers, *plus* the various statutory consequences" involved, such as "the loss of significant state benefits, such as child-care licenses or employment." *Humphries*, 554 F.3d at 1185, 1200.

We have yet to address whether an individual's inclusion in CWS/CMS implicates a similar constitutional liberty interest. We confront a subset of that question in this appeal: whether the inclusion of the "unfounded" child abuse allegations against Endy in CWS/CMS—a statewide internal database—deprives him of a "stigma-plus" liberty interest such that due process protections are required. On this record, we conclude it does not.

A.

We turn first to whether the inclusion of Endy's "unfounded" child abuse allegations in CWS/CMS is stigmatizing. "No doubt . . . being falsely named as a child abuser on an official government index is defamatory." *Miller v. California*, 355 F.3d 1172, 1178 (9th Cir. 2004). An accusation of child sexual abuse, in particular, is far more damning to a person's reputation in our society than perhaps any other kind of accusation, including those in which the Supreme Court has identified stigma. *Humphries*, 554 F.3d at 1186; *see, e.g.*, *Paul*, 424 U.S. at 695–97 (plaintiff's picture appeared on a flyer of suspected shoplifters); *Constantineau*, 400 U.S. at 434–35 (plaintiff's name was

listed among people forbidden to buy alcohol due to excessive drinking).  Accordingly, we found it obvious that the plaintiffs in *Humphries* suffered stigma from their listings in CACI as substantiated child abusers.  *See Humphries*, 554 F.3d at 1186.

There are some important distinctions, however, between Endy's listing in CWS/CMS and the CACI listings that we found "unquestionably stigmatizing" in *Humphries*. *See id.*  First, the child abuse allegations against Endy are listed as "unfounded" in CWS/CMS, unlike the "substantiated" allegations that are required to be included in CACI.  In that regard, Endy has not been labeled a child abuser by the fact of his inclusion in CWS/CMS.  Rather, he is listed as an individual who had been accused of child abuse and whose allegations were determined to be "unfounded"—meaning, the allegations were false, inherently improbable, involved accidental injury, or otherwise did not constitute child abuse or neglect under the statute.  *See* Cal. Penal Code § 11165.12(a).  We have observed that the statute imposes a "high standard of proof" for an allegation to be deemed "unfounded."  *Humphries*, 554 F.3d at 1177.

Second, the "unfounded" child abuse allegations against Endy are maintained in CWS/CMS, an internal database generally accessible only to government agencies, in contrast to the more publicly accessible CACI.  As a result, Endy does not face the same exposure to reputational harm experienced by the *Humphries* plaintiffs—whose listings in CACI allowed potential employers, educational institutions, and "a broad range of third parties" with access to CACI to identify them as "substantiated" child abusers.  *Id.*

Endy, however, asserts that he faces stigma by his mere inclusion in CWS/CMS because anyone with access to the

database could see him listed amongst many child abusers and "would have to hunt through hundreds of CWS/CMS pages" to find the final disposition of his allegations. Indeed, there may be some stigma attached to the mere fact of being listed in any database used to maintain reports of suspected child abuse—even if the final disposition of a report is that the allegation was determined to be "unfounded." This would be particularly concerning were such information accessible to parties who may not appreciate the meaning of an "unfounded" listing under CANRA and thus might view Endy as a child abuser by the mere fact of his inclusion in CWS/CMS.

Here, however, the record demonstrates that Endy's information in CWS/CMS is accessed and maintained by child welfare agencies and shared only with other governmental entities responsible for the safety and welfare of children. In effect, the entities who are able to view Endy's listing in CWS/CMS are those who should be familiar with the meaning of an "unfounded" allegation and the high burden that attaches to such a finding. Endy offers no evidence that those with access to CWS/CMS might misconstrue his "unfounded" listing as equivalent to a "substantiated" or "inconclusive" one. Nor does Endy present evidence that his information in CWS/CMS—which is confidential and generally prohibited from public disclosure absent court order—might be disseminated in such a manner that would result in his public branding as a child abuser. Although the statute has various disclosure exceptions, *see, e.g.*, Cal. Welf. & Inst. Code § 827, there is no indication in the record that these exceptions allow for

such a level of access that would make Endy's inclusion in CWS/CMS stigmatizing.**[3]**

Given the "unfounded" nature of the child abuse allegations against Endy listed in CWS/CMS, coupled with the confidentiality of the information in CWS/CMS, we conclude that Endy has failed to show that he suffered stigma from his inclusion in CWS/CMS.

## B.

Even if we assume that the County's continued inclusion of Endy's "unfounded" allegations in CWS/CMS is stigmatizing, Endy must also show that it altered or extinguished one of his known rights under the "stigma-plus" test. *See Paul*, 424 U.S. at 711. In *Humphries*, we found that inclusion in CACI created a "tangible burden on an individual's ability to obtain a right or status recognized by state law" because CANRA "explicitly requires agencies to consult the CACI and perform an independent investigation before granting a number of licenses and benefits." 554 F.3d at 1188. We also found "a tangible burden . . . where the plaintiff can show that, as a practical matter, the law creates a framework under which agencies reflexively check the stigmatizing listing—whether by

---

**[3]** We recognize that in *Castillo v. County of Los Angeles*, the district court found that the inclusion of "inconclusive" allegations in CWS/CMS was stigmatizing given the number of statutory "exceptions for disclosure of CWS/CMS information." 959 F. Supp. 2d 1255, 1260–61 (C.D. Cal. 2013). The record in *Castillo* is not before us, nor are the arguments presented in that case, which pertain to "inconclusive" allegations in CWS/CMS. In Endy's case, the record does not present a triable issue of material fact as to the stigma caused by his "unfounded" allegations in CWS/CMS.

internal regulation or custom—prior to conferring a legal right or benefit." *Id.*

Here, Endy does not point us to any statutory provision requiring agencies to consult CWS/CMS prior to conferring a legal right or benefit. Nor does Endy provide any evidence that a legal framework exists for agencies to "reflexively check" CWS/CMS prior to conferring a legal right or benefit. In fact, the record demonstrates that, under the existing legal framework, access to CWS/CMS is limited to specific governmental entities for primarily investigative and case management purposes, and records contained within the database cannot be disclosed to non-designated entities without a court order. Nonetheless, Endy broadly argues that his inclusion in CWS/CMS has negatively impacted his rights with respect to his employment at Caltrans, visitation at his daughter's school, and his ability to adopt or foster a child. None of these claims is viable as Endy fails to present a triable issue that any of these consequences was a result of his inclusion in CWS/CMS.

First, Endy asserts that his inclusion in CWS/CMS caused his government employer, Caltrans, to deny him a promotion, basing his claim primarily on rumors he overheard from his coworkers. Endy does not point out any provisions in CANRA or other statutes or regulations that would permit his employer to obtain access to CWS/CMS information, nor does he proffer any evidence that a background check by his employer would lead to a release of his information in CWS/CMS. According to an affidavit from an official Caltrans representative, Caltrans does not conduct background checks on its existing employees except where "information is brought to its attention," and does not seek the disclosure of juvenile records or child welfare information pertaining to its employees, from CWS/CMS or

elsewhere. Accordingly, the record presents no genuine issue that Endy's employment rights were altered or extinguished by his inclusion in CWS/CMS.

Second, Endy contends that he has been unable to visit or volunteer at his daughter's school because of his listing in CWS/CMS. According to Endy, the principal of his daughter's school told him to stay away from the school at a time when his "substantiated" allegations were still pending in juvenile court. Endy does not cite any specific statutory, regulatory, or policy provisions that might explain how the subsequent "unfounded" allegations against him in CWS/CMS would result in such a denial of his school visitation rights. Although California law allows juvenile case files to be inspected by the "superintendent or designee of the school district where the minor is enrolled or attending school," Cal. Welf. & Inst. Code § 827(a)(1)(G), there is no evidence that this provision extends to a school principal or otherwise allows a school to deny an individual visitation rights based on "unfounded" reports in CWS/CMS. Furthermore, Endy admits that he has not inquired whether he could visit the school since his allegations were deemed "unfounded." Thus, even accepting the truth of Endy's allegations, they do not demonstrate that he was denied visitation at his daughter's school due to his "unfounded" listings in CWS/CMS.

Finally, Endy argues that his inclusion in CWS/CMS prevents him from adopting a child or becoming a guardian. As a preliminary matter, we recognize that the relevant legal framework may provide some support for the general claim that a person's inclusion in CWS/CMS might impact his child placement rights. While CWS/CMS is primarily an internal record-keeping database used by child welfare workers to manage their cases and make appropriate case

decisions, it is also used to collect and report information for programs "closely related to child welfare services, including foster care and emergency assistance." Cal. Welf. Inst. Code § 16501.5. Additionally, one of the entities permitted to view case files in CWS/CMS without court order is the "State Department of Social Services, to carry out its duties . . . to oversee and monitor county child welfare agencies, children in foster care or receiving foster care assistance, and out-of-state placements." Cal. Welf. Inst. Code § 827(a)(1)(I). In essence, the statutory scheme contemplates that CWS/CMS may be regularly accessed by agencies responsible for the placement of children in foster homes and administering other child welfare services. The record also indicates that County policy requires its agencies to check CWS/CMS prior to placing children in certain homes.[4]

However, there is no provision in either California law or County policy that suggests that an individual might be denied his right to adopt, foster, or become a legal guardian purely on the basis of "unfounded" allegations against him in CWS/CMS. Endy claims—without citing any particular County policy or regulation—that an individual with four allegations in CWS/CMS, even "unfounded" ones, would be classified by the agency as "very high risk," thereby disqualifying him from child placement. But according to the DCFS Policy Manual, "at-risk" indicators include only

---

[4] According to the DCFS Policy Manual, a "CWS/CMS clearance is required on adults (with the exception of a licensed foster parent)" in situations such as: assessing the return of a child to the home of his/her parent, assessing the home in which the identified child victim may be placed, assessing a license-exempted day care provider, assessing a prospective monitor for visits, recommending unmonitored visits for any adult, and when a new person moves into the household of the identified child victim.

"substantiated or inconclusive allegations of child abuse to a child protective agency" but "not . . . unfounded reports." In short, the record suggests that an individual's inclusion in CWS/CMS for "substantiated" or "inconclusive" allegations could lead to an alteration of his foster or childcare rights, but not when his allegations are "unfounded."

Nor does the record evidence support Endy's particular claim that his adoption or guardianship rights have been impacted by his listing in CWS/CMS. Endy alleges that a DCFS employee informed him that he could not adopt his niece or nephew, but does not clarify whether this conversation occurred before or after the juvenile court dismissed his "substantiated" allegations. Endy also attempts to support his claim with an email from a DCFS employee stating that the agency has "a blanket rule that if a potential applicant has a substantiated allegation or a case history we do not recommend them as foster parents." As the district court correctly explained, this evidence was not only inadmissible, but also not dispositive in any event, given the email's lack of any mention of CWS/CMS or the impact of "unfounded" allegations. Furthermore, despite claiming that his inclusion in CWS/CMS has impacted his adoption and guardianship rights, Endy admits in his deposition that he has not made an attempt to adopt or obtain guardianship over any child and does not plan to do so. In sum, Endy does not raise a genuine issue of material fact that the continued inclusion of "unfounded" allegations against him in CWS/CMS has resulted in a "tangible burden" on his right to adopt, foster, or become a legal guardian.

We find that Endy's arguments as to the "plus" prong of the "stigma-plus" test rely upon mere allegations in his complaint, which are insufficient to overcome the County's evidence supporting its motion for summary judgment.

Because Endy fails to raise a triable issue as to whether his inclusion in CWS/CMS deprived him of a constitutional liberty interest, his procedural due process claim fails and we need not reach the issue of whether the attendant procedures were sufficient.

## IV.

We briefly address Endy's remaining claims on appeal, all of which we find lack merit.[5]

## A.

Endy alleges that his inclusion in CWS/CMS violates his constitutional right to privacy. Because Endy cited only one case under California law in support of this claim below, the district court treated his claim as a privacy violation claim under state law. Whether viewed under state or federal constitutional law, Endy's privacy claim fails.

Under the California Constitution, "[o]ne class of legally recognized privacy interests, described as 'informational privacy,' includes 'interests in precluding the dissemination or misuse of sensitive and confidential information.'" *Burt v. County of Orange*, 15 Cal. Rptr. 3d 373, 382 (Ct. App. 2004). This "right to privacy is not absolute, and a defendant may prevail by establishing a defense, including the existence of countervailing interests that justify the invasion of a person's privacy." *Id.*

---

[5] We decline to address the merits of Endy's bill of attainder claim, which he raises for the first time on appeal. The general "rule in this circuit is that appellate courts will not consider arguments that are not 'properly raise[d]' in the trial courts." *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989) (citation omitted).

Similarly, federal constitutional law recognizes a "right to informational privacy" stemming from "the individual interest in avoiding disclosure of personal matters." *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999) (quoting *Doe v. Attorney General*, 941 F.2d 780, 795 (9th Cir. 1991)). This right also "is not absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest." *Id.* at 959. Legitimate governmental interests combined with protections against public dissemination can foreclose a constitutional violation. *Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 138 (2011).

Endy's constitutional privacy claim fails under both state and federal law because he provides no evidence that his information has been publicly disseminated or disclosed. Rather, Endy claims that the mere inclusion of his personal information in the internal child welfare databases violates his constitutional right to privacy because numerous agencies can access the information. However, Endy presents no evidence that the County discloses information about anyone with only "unfounded" allegations in the databases. Moreover, Endy is unable to show that the County's important governmental interest in preventing child abuse is outweighed by the minimal risk of disclosure of Endy's information in CWS/CMS. As we recognized in *Humphries*, the government has a significant interest in maintaining a record of all reports of child abuse—even "inconclusive" and "unfounded" claims—since these reports "can reveal patterns that might not otherwise be detected and can be useful to law enforcement." *Humphries*, 554 F.3d at 1194. The district court did not err in granting summary judgment for the County on Endy's privacy claim.

B.

Without a showing that the County deprived his liberty interests, Endy's *Monell* claim necessarily fails.  In order to establish municipal liability under § 1983, "a plaintiff must show that a 'policy or custom' led to" the deprivation of his constitutional liberty interest.  *Castro v. County of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc) (quoting *Monell*, 436 U.S. at 694).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted).

As with his procedural due process claim, Endy has not provided evidence that County policies or common practices have allowed or are likely to allow the use of his "unfounded" allegations to curtail his employment, child placement, or child visitation rights.  Accordingly, we affirm the grant of summary judgment for the County on Endy's *Monell* claim.

V.

Understandably, Endy is troubled by the knowledge that the County continues to keep an internal record of prior child abuse allegations made against him, even though these allegations were dismissed by a court of law.  The County, however, has a strong interest in maintaining all reports of suspected child abuse in CWS/CMS—even those that result in "unfounded" dispositions—because doing so helps its child welfare and law enforcement agencies protect children from abuse and neglect.  Here, Endy failed to raise a triable issue of material fact that the records of his "unfounded" allegations in CWS/CMS caused him reputational harm, or

that they are used by the County to alter or extinguish his rights to employment, child placement, or child visitation. The record indicates that the County considers only "substantiated" and "inconclusive" allegations to be risk factors for child placement, but not "unfounded" ones such as Endy's. Accordingly, Endy fails to show that his inclusion in CWS/CMS implicates his liberty interests so as to require procedural due process. Endy also has not shown that the County publicly disseminates or misuses his information in a manner that would violate his constitutional right to privacy. The district court did not err in determining that Endy has not presented any genuine issue of material fact as to his claims and that the County is entitled to judgment as a matter of law.

Accordingly, we **AFFIRM** the district court's grant of summary judgment.