UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ESTATE OF CINDY LOU HILL, by and through its personal representative, Joseph A. Grube,

    Plaintiff - Appellee,

 v.

NAPHCARE, INC., an Alabama corporation,

    Defendant - Appellant,

and

COUNTY OF SPOKANE, a political subdivision of the State of Washington,

    Defendant.

No. 23-2741

D.C. No.
2:20-cv-00410-MKD
Eastern District of Washington,
Spokane

ORDER

Before: GILMAN, WARDLAW, and COLLINS, Circuit Judges.[*]

Appellee Estate of Cindy Lou Hill's Motion to Clarify or Amend Court Order or Disposition, Dkt. No. 67, is **GRANTED**. We have amended the memorandum disposition filed on April 14, 2025, withdrawn the April 14, 2025 disposition, and hereby substitute the attached amended memorandum disposition.

---

  [*]  The Honorable Ronald Lee Gilman, United States Circuit Judge for the Court of Appeals, 6th Circuit, sitting by designation.

Appellant's Petition for Rehearing En Banc, Dkt. 76, is **DENIED**.  Judge Wardlaw voted to deny the petition for rehearing en banc, and Judge Gilman so recommended.  Judge Collins voted to grant the petition for rehearing en banc.  The petition for rehearing en banc was circulated to the judges of the Court, and no judge requested a vote for en banc consideration.  Fed. R. App. P. 40.

No further petitions for rehearing or rehearing en banc to the amended disposition will be entertained.

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 5 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ESTATE OF CINDY LOU HILL, by and through its personal representative, Joseph A. Grube,

        Plaintiff - Appellee,

  v.

NAPHCARE, INC., an Alabama corporation,

        Defendant - Appellant,

and

COUNTY OF SPOKANE, a political subdivision of the State of Washington,

        Defendant.

No. 23-2741

D.C. No.
2:20-cv-00410-MKD

AMENDED MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of Washington
Mary K. Dimke, District Judge, Presiding

Argued and Submitted October 21, 2024
San Francisco, California

Before: GILMAN, WARDLAW, and COLLINS, Circuit Judges.[**]
Dissent by Judge COLLINS.

---

     [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

     [**]    The Honorable Ronald Lee Gilman, United States Circuit Judge for the Court of Appeals, 6th Circuit, sitting by designation.

NaphCare, Inc. ("NaphCare"), a provider of medical services for the Spokane County Jail ("the Jail"), appeals the district court's order denying NaphCare's Rule 50(b) motion for Judgment as a Matter of Law, and upholding a jury verdict that imposed municipal liability and awarded punitive damages against NaphCare arising from Cindy Lou Hill's ("Hill") custodial death.[1] We have jurisdiction under 28 U.S.C. § 1291. We affirm in part and vacate and remand in part.

## A.

Sufficient evidence supports the jury's verdict imposing municipal liability on NaphCare under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) ("*Monell*"). We must uphold a jury's verdict unless "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Lam v. City of Los Banos*, 976 F.3d 986, 995 (9th Cir. 2020). We "draw all reasonable inferences" in favor of the Estate of Cindy Lou Hill ("the Estate"), and we "disregard all evidence favorable to [NaphCare] that the jury [was] not required to believe." *Id.* To establish *Monell* liability under 42 U.S.C. § 1983 against a private entity operating under color of state law, a plaintiff

---

[1] NaphCare does not appeal the jury's award of compensatory damages or its liability under Washington state law. Spokane County is not a party to this appeal.

must show that: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) that policy or custom amounted to deliberate indifference to the plaintiff's constitutional right;[2] and (4) the policy or custom was the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F3d 892, 900 (9th Cir. 2011) (listing elements); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (*Monell* liability applies to private entities acting under color of state law). NaphCare concedes that it violated Hill's constitutional right to adequate medical care under the Ninth Circuit's standard, but it argues that it is entitled to judgment as a matter of law because "the jury could have relied only on speculation to reach its verdict." *Lakeside-Scott v. Multnomah County*, 556 F.3d 797, 803 (9th Cir. 2009). We disagree.

    *1.    Deprivation of a constitutional right.*[3] The Estate established at trial, and NaphCare does not dispute, that Hill was deprived of her constitutional right to adequate medical care when a NaphCare nurse:

> (i) made an intentional decision with respect to the conditions under which [Hill] was confined; (ii) those conditions put [Hill] at substantial risk of suffering serious harm; (iii) the [nurse] did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk

---

[2]    The Estate argues that it was not required to prove deliberate indifference at trial. For the purposes of this appeal, we assume without deciding that deliberate indifference is an essential element of the Estate's *Monell* claim.

[3]    Although NaphCare concedes this element, we review it to provide context for the remaining elements of *Monell* liability.

involved . . . ; and (iv) by not taking such measures, the [nurse] caused [Hill's] injuries.

*Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

The evidence at trial showed that on the morning of Saturday, August 25, 2018, NaphCare nurse Hannah Neill-Gubitz ("Gubitz") found Hill lying shirtless on the floor of her cell and screaming in pain. Hill's cellmate told Gubitz that Hill was experiencing severe abdominal pain, and Hill continued to lie in the fetal position and repeat "I'm sick, I'm sick." Gubitz examined her for five and a half minutes, determined that Hill was experiencing severe abdominal pain, and then asked corrections officers to transfer Hill in a wheelchair to the "medical watch" area of the Jail. Around 3:00 p.m., Gubitz stood outside Hill's cell for under two minutes and recorded that Hill had no signs of medical distress. At approximately 5:25 p.m., a corrections officer realized that Hill was unconscious and began CPR. Hill was transferred to a hospital and pronounced dead. Her autopsy revealed that her cause of death was "acute bacterial peritonitis due to ruptured duodenal-liver adhesions with perforation of duodenum." The jury found that Gubitz's actions amounted to a failure to provide Hill with adequate medical care.

2. *Existence of a policy or custom.* The Estate established that NaphCare had a policy or custom of "using medically untrained jail guards to monitor NaphCare patients in need of medical monitoring by medical professionals." At trial, the Estate demonstrated NaphCare's use of the Jail's "medical watch" area, in

4

23-2741

which corrections officers briefly observe inmates through a small window in the cell door every 30 minutes and check for signs of life. The officers document their observations, but are not instructed to ask the patients how they feel, check for symptoms, or otherwise investigate medical conditions. The Estate argued at trial that NaphCare put inmates in need of professional medical care in the Jail's "medical watch" instead of providing them with necessary care.

The Estate's evidence at trial was sufficient to prove such a policy or custom. An entity's policy or custom need not be "fomal[ly] approved," *Monell*, 436 U.S. at 691, or written down, *Navarro v. Block*, 72 F.3d 712, 715 (9th Cir. 1995), *as amended on denial of reh'g* (Jan. 12, 1996). "[C]onsciously designed" and "routine practices" can amount to a custom or policy. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc). Dr. Roscoe, an expert witness for the Estate, testified that it "was a regular practice for NaphCare to turn its ill patients over to security guards for medical watch," even for "acutely ill inmates." NaphCare's expert, Dr. Joshua, agreed that medical watch was "used for patients who needed acute medical monitoring." Officer Wirth, a corrections officer at the Jail, testified that the Jail had a "shake and wake" procedure for those experiencing alcohol withdrawal—which an expert witness testified can be a fatal condition—while in custody. Despite NaphCare's written policy requiring "constant observation by health care staff" for anyone at risk of withdrawal, the

"shake and wake" procedure is performed by officers lacking medical training, who enter cells and physically awaken detainees experiencing withdrawal to elicit "an actual verbal awakened response by them" instead of referring them to medical providers for care. Moreover, the form NaphCare used to track symptoms of those on medical watch included serious symptoms like "Worsening Chest Pain" and "Worsening abdominal pain," which supports the reasonable inference that inmates with existing chest or abdominal pain were sent to medical watch. Officer Byington, a corrections officer at the Jail, testified that medical watch observations lasted five to ten seconds, and that there was no way for him to determine in that time whether an inmate was sleeping or was in the process of dying. The jury could have reasonably concluded from this evidence that NaphCare routinely sent people with serious, potentially fatal, conditions to medical watch for monitoring by medically untrained guards.

The circumstances surrounding Hill's death further support the jury's finding of this policy or custom. Gubitz, the NaphCare day manager and charge nurse responsible for Hill's medical treatment, testified that her actions—including the transfer of Hill to medical watch and her decision not to call a medical provider despite Hill's severe abdominal pain—were "done pursuant to the usual and the regular customs and practices of NaphCare." *See Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013) (an employee's belief that she is following policy

can support a factfinder's determination that such a policy exists and that it was the moving force behind a constitutional violation).  Dr. Joshua, NaphCare's expert, agreed that Gubitz's decision to send Hill to medical watch did not violate any of NaphCare's policies.  Officer Wirth testified that, because Hill was in so much pain, she and another guard had to use a wheelchair to transport Hill to medical watch.  That both officers did so without protest supports the reasonable inference that this practice was customary.  Finally, NaphCare's decision not to discipline Gubitz, change its policies, solicit feedback from its staff, or take any other remedial steps following Hill's death is also relevant evidence of a policy.  *See Henry v. County of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997) (holding that "post-event evidence . . . is highly probative" of a policy or custom), *as amended on denial of reh'g by Henry v. County of Shasta*, 137 F.3d 1372 (9th Cir. 1998).

    *3.    Deliberate indifference.*  The Estate also introduced sufficient evidence from which a reasonable jury could conclude that NaphCare acted with deliberate indifference to Hill's constitutional right to adequate medical care.  Dr. Roscoe testified that NaphCare's policies deviated significantly from correctional healthcare standards.  Gubitz's testimony that she voiced concerns to NaphCare administrators about the lack of medical providers at the Jail during weekends also supports the jury's determination that NaphCare had "actual or constructive knowledge that its practices were substantially certain to cause a constitutional

violation." *See Sandoval v. County of San Diego*, 985 F.3d 657, 682–83 (9th Cir. 2021) (defining deliberate indifference).

4.     *Moving force behind the constitutional violation.*  Finally, there was sufficient evidence introduced at trial from which a reasonable jury could conclude that NaphCare's policy was the moving force behind the deprivation of Hill's constitutional right to adequate medical care.  Gubitz testified that if a medical provider had been staffed at the Jail on the weekend in question, she likely would have brought that provider to see Hill based on Hill's statement that she was experiencing severe abdominal pain.  Dr. Roscoe testified that, in a situation involving a patient with severe abdominal pain, a nurse should confer with a provider or immediately transfer the patient to a hospital's emergency department. Dr. Schubl, an expert witness for the Estate, testified that Hill would have had at least a 90% chance of survival if she had been transferred to the hospital shortly after Gubitz saw her in the morning, and that she would have had at least a 50% chance of survival if she had been transferred to the emergency room before she lost consciousness.

On this record, there is "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *E.E.O.C. v. Go Daddy*

*Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009) (citation omitted). Thus, we conclude that the district court properly upheld the verdict.[4]

B.

NaphCare seeks reversal of the jury's verdict because the jury was not instructed that it must find deliberate indifference in order to impose *Monell* liability. Because NaphCare failed to object to the district court's instructions at trial, we review under the plain-error standard. *Bearchild v. Cobban*, 947 F.3d 1130, 1139 (9th Cir. 2020).

A party challenging jury instructions under the plain-error standard must show that: "(1) there was error; (2) the error was plain; (3) the error affected that party's substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* Even assuming that the omission of a specific deliberate-indifference instruction was plainly in error, NaphCare's argument fails because, based on its imposition of punitive damages, the jury necessarily found deliberate indifference. The district court instructed the jury that

---

[4]     We note that a recent decision by another panel of our court supports this conclusion. In *Nyarecha v. County of Los Angeles*, No. 23-55773, 2024 WL 4511616 (9th Cir. Oct. 17, 2024), we reversed the district court's grant of summary judgment to the defendant on a *Monell* claim involving medical-watch procedures and a death in custody. In that case, we held that the jury could find deliberate indifference where six different guards passed a dying inmate 26 times without performing an adequate safety check; in this case, the evidence supports an inference that *all the guards* passed by *all the inmates* on medical watch without performing an adequate safety check.

9                                                                    23-2741

it "may award punitive damages against NaphCare only if . . . [NaphCare's conduct] reflect[ed] a complete indifference to [Hill's] safety or rights, or [] the defendant act[ed] in the face of a perceived risk that its actions w[ould] violate a person's rights under federal law." "[C]onsider[ing] the entire set of instructions as a whole," *id.* at 1139, the jury's imposition of punitive damages in this case necessarily relied on a finding of deliberate indifference, so neither NaphCare's substantial rights nor the proceedings were affected by the omission of a specific deliberate-indifference instruction.

C.

Under de novo review, we conclude, however, that the jury's punitive damages award against NaphCare is excessive under the Due Process Clause. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003) ("To the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property." (citation omitted)). Where, as here, the amount of compensatory damages is significant, the ratio of punitive to compensatory damages should not exceed four to one unless the defendant's behavior was particularly "egregious" or "reprehensible." *Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 962, 963 (9th Cir. 2005). The jury awarded $2.75 million in total compensatory damages and held NaphCare and Spokane County jointly and severally liable for this

amount.  The jury also awarded $24 million in punitive damages against NaphCare only.  The ratio between the plaintiff's "individual compensatory damages and punitive damages awards as to each defendant," results in a punitive to compensatory damages ratio for NaphCare of $24 million to $2.75 million, or approximately 8.7:1.  *See id.* at 960–61.

We consider five factors when analyzing the reprehensibility of a defendant's conduct; specifically whether:

> [1] the harm caused was physical as opposed to economic; [2] the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; [3] the target of the conduct had financial vulnerability; [4] the conduct involved repeated actions or was an isolated incident; and [5] the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Hardeman v. Monsanto Co.*, 997 F.3d 941, 972–73 (9th Cir. 2021) (citation omitted).  Here, the first two factors favor finding egregiousness because NaphCare's conduct caused physical—and deadly—harm in reckless disregard of Hill's safety.  The third factor is less relevant in the context of "a mostly noneconomic damages case like this one." *Id.* at 973–74.  As for the fourth and fifth factors, the record does not show that NaphCare repeatedly caused such harm, or that it did so intentionally.  On balance, we hold that NaphCare's conduct was not sufficiently reprehensible to justify the imposed punitive damages award.  We accordingly vacate the decision of the district court and remand for the district

court to reduce the ratio of punitive to compensatory damages not to exceed four to one.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**[5]

---

[5] The parties shall bear their own costs on appeal.

*Estate of Cindy Lou Hill v. NaphCare*, No. 23-2741

COLLINS, Circuit Judge, dissenting:

In my view, Plaintiff-Appellee Estate of Cindy Lou Hill ("the Estate") failed to present sufficient evidence to establish that Defendant-Appellant NaphCare, Inc. ("NaphCare") was liable under 42 U.S.C. § 1983 for the denial of adequate medical care to Hill, who at the time was a pretrial detainee at the Spokane County Jail where NaphCare had contracted to provide medical care.  I therefore would reverse the district court's denial of NaphCare's motion for judgment as a matter of law under Federal Rule of Civil Procedure 50, and I would remand for entry of judgment in favor of NaphCare on the Estate's § 1983 claim.  Because the majority concludes otherwise, I respectfully dissent.

## I

On Tuesday, August 21, 2018, Cindy Lou Hill was arrested for drug possession and taken to the Spokane County Jail.  After Hill indicated that she had used heroin, she was placed on the jail's opiate withdrawal protocol.  On Saturday, August 25, at around 8:45 am, Hill began screaming in pain inside her cell and stating that she was too sick to move.  NaphCare nurse Hannah Gubitz examined Hill and decided to transfer her to the section of the jail called "2 West" (also known as "Medical Watch") on account of "severe abdominal pain."  The cells used for Medical Watch were essentially the same as the cells in the rest of the jail.

Guards also conducted check-ins on the status of those in Medical Watch in substantially the same way they would for inmates in the general population. These check-ins occurred every thirty minutes. However, guards in Medical Watch had an additional protocol, with each check-in, of documenting observations of the inmates on a form outside of the cell. Further, nurses assessed inmates in Medical Watch at least once per shift, and Nurse Gubitz testified that she saw every detainee on a withdrawal protocol at least *twice* per shift, especially detainees on an opiate withdrawal protocol. Indeed, on the same day that Hill was transferred, at around 3:00 pm, Nurse Gubitz checked on Hill in Medical Watch. Nurse Gubitz reported that Hill appeared normal, responsive, and in no immediate distress, and that Hill refused to be assessed at that time. Just a few hours later, at 5:25 pm, Hill died from a perforated intestine, which the medical examiner opined was caused by the rupturing of scar tissue adhesions from a previous operation.

The Estate brought this action against NaphCare, alleging (1) a negligence claim and (2) a 42 U.S.C. § 1983 claim against NaphCare based on a violation of Hill's Fourteenth Amendment right to adequate medical care. The case proceeded to trial, and after the close of evidence, NaphCare moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on the § 1983 claim. The district court deferred its ruling on the Rule 50(a) motion and later denied that motion without prejudice to a renewed motion under Rule 50(b). The jury found

2

NaphCare liable for both the negligence and § 1983 claims, and it awarded $2.75 million in total compensatory damages. It also awarded $24 million in punitive damages based solely on the § 1983 claim. NaphCare renewed its motion for judgment as a matter of law on the § 1983 claim under Rule 50(b), but the district court denied that motion and upheld the jury verdict. NaphCare timely appealed.

## II

Applying de novo review to the district court's denial of NaphCare's Rule 50(b) motion, *see Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 802 (9th Cir. 2009), I would hold that the Estate failed to present sufficient evidence at trial to support its § 1983 claim.

## A

We have held that the liability under § 1983 of a private entity acting under color of state law (such as NaphCare here) is evaluated under the same liability standards that, under *Monell v. Department of Social Services of the City of N.Y.*, 436 U.S. 658 (1978), are applicable to a municipal governmental body. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012). Accordingly, such entities may be held liable under § 1983 "only for 'their *own* illegal acts,'" and they are "not vicariously liable . . . for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citation omitted). Thus, just as "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that

'action pursuant to official municipal policy' caused their injury," *id.*, a plaintiff suing a private entity under § 1983 must show that an official policy of the private entity caused the alleged constitutional violation, *see Tsao*, 698 F.3d at 1143. Official policy, for these purposes, includes the formal policies set by the entity's governing body, "the acts of its policymaking officials," and "practices so persistent and widespread as to practically have the force" of official policy. *Connick*, 563 U.S. at 61. Here, the Estate disclaimed reliance on any formally adopted policy, nor has it contended that any "policymaking officials" of NaphCare committed any specific acts that led to the constitutional violation in this case. Instead, the Estate's § 1983 claim against NaphCare rests solely on the contention that a company "custom" renders it liable—*i.e.*, NaphCare is liable based on a particular "persistent and widespread" practice that effectively has the force of official company policy. *Id*.

To establish § 1983 liability for a particular constitutional tort on the theory that it was caused by a company "custom," the Estate had to show several things. As a threshold matter, the Estate needed to identify and prove that the particular practice that caused the constitutional tort was "so permanent and well settled" that it had the force of official company policy. *Gordon v. County of Orange* ("*Gordon II*"), 6 F.4th 961, 974 (9th Cir. 2021). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of

4

sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id*. (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)). While this threshold showing is essential, "[i]t is not sufficient for a plaintiff to identify a custom or policy, attributable to the [company], that caused [its] injury." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016). "A plaintiff must also demonstrate that the custom or policy was adhered to with *deliberate indifference* to the constitutional rights of the jail's inhabitants." *Id*. (emphasis added) (simplified). The only exception to this deliberate-indifference requirement is where the specific custom is *itself* unconstitutional. *See Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404–05 (1997); *see also Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)) (giving the example of a custom of widespread racial discrimination).

The Estate argues that the district court correctly held that the exception to the deliberate-indifference requirement applies here, because the Estate established a specific practice that was itself a constitutional violation. According to the Estate, it proved at trial that NaphCare had a "longstanding practice of using medically untrained jail guards to monitor NaphCare patients *in need of medical monitoring by medical professionals*," and that custom itself violated the Constitution because, as defined, that practice denied to pretrial detainees the

medical care by medical professionals that they objectively needed. Alternatively, the Estate argues, it sufficiently established NaphCare's deliberate indifference at trial.

**B**

As a threshold matter, I reject the Estate's contention that it did not need to establish deliberate indifference in order to prevail on its § 1983 claim against NaphCare.

In holding that no showing of deliberate indifference was required in this case, the district court assumed that every use of Medical Watch for a detainee "in need of medical monitoring by medical professionals" would violate the Constitution, thereby rendering the alleged de facto policy to use Medical Watch for such detainees as being itself unconstitutional. But to the extent that this assumption is correct, it inevitably rests, in my view, on the unstated premise that such a policy would reflect *deliberate indifference* to such detainees' medical needs. The assumption cannot properly rest on the alternative view that every use of Medical Watch for persons in need of medical monitoring by medical professionals will entail *an actual constitutional injury*. Under this court's standards for determining whether a particular deprivation of medical care to a pretrial detainee by an individual defendant violated the Constitution, the plaintiff must show that "(i) the defendant made an intentional decision with respect to the

6

conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon v. County of Orange* ("*Gordon I*"), 888 F.3d 1118, 1125 (9th Cir. 2018). There is certainly no evidence in the trial record that *every* detainee in need of medical monitoring by medical professionals suffered a constitutional injury in this sense by being sent to Medical Watch. To the extent that such a practice is itself unconstitutional, that can only be due to the fact that the across-the-board application of such a practice, regardless of the severity of the circumstances, would reflect deliberate indifference to the detainee's medical needs. Accordingly, I think the district court was wrong to the extent that it concluded that this was a case in which the challenged custom could be shown to be itself unconstitutional without relying on a deliberate-indifference theory. Given the legal context surrounding medical claims by pretrial detainees, and the factual context of this case, deliberate indifference is an inescapable component of the Estate's theory of liability.

## C

It follows that, in order to establish NaphCare's liability under § 1983, the Estate had to show, among other things, that (1) the particular practice that caused the constitutional injury in this case was sufficiently "widespread" and "permanent" to constitute NaphCare company policy; and (2) NaphCare adhered to that practice "with deliberate indifference to the constitutional rights of the jail's inhabitants." *Castro*, 833 F.3d at 1074, 1076 (simplified). Taken together, these elements required proof of a widespread and settled practice that has produced a "pattern of similar constitutional violations." *Connick*, 563 U.S. at 62; *see also Gordon II*, 6 F.4th at 974; *Trevino*, 99 F.3d at 918.[1] The Estate failed to present sufficient evidence to carry its burden on this score.

There was no evidence in the trial record of any other instance in which a patient who needed monitoring by medical professionals was instead sent to Medical Watch to be monitored by medically untrained jail guards, much less that any such instance resulted in constitutional injury. Nor is there sufficient circumstantial evidence to support a reasonable inference that such instances must

---

[1] In theory, a plaintiff can alternatively show that the potential for a constitutional violation from a particular policy is so "obvious" that a pattern need not be shown. *See Brown*, 520 U.S. at 409. But where, as here, the plaintiff relies on a permanent and widespread recurring practice to define the de facto policy that allegedly creates the potential for a constitutional violation, it is difficult to see how a plaintiff could establish both the existence of the well-established specific practice *and* its obvious potential for constitutional injury *without* showing prior incidents.

8

have occurred.[2]  Because the Estate "did not identify any other instance" in which a referral to Medical Watch "resulted in the provision of inadequate medical care," its *Monell*-based claim against NaphCare under § 1983 failed as a matter of law. *Gordon II*, 6 F.4th at 974.

*       *       *

For the foregoing reasons, I dissent from the affirmance of the district court's denial of NaphCare's Rule 50(b) motion with respect to the Estate's § 1983 claim.

---

[2] In arguing to the contrary, the Estate relies heavily on Nurse Gubitz's statement that Medical Watch was used for those who needed "acute" medical monitoring, as well as on the Estate's expert's parroting of that comment.  This single word cannot bear the enormous weight that the Estate places on it.  The full context of the deposition transcript makes clear that Gubitz was referring to monitoring needed for a *short duration*, as opposed to for a "chronic medical condition[]."  At no point in her testimony did she claim or concede that it was the well-established practice of NaphCare to send *severely* ill detainees in need of medical care to Medical Watch.